UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JULIUS C. AGUILA,<br><br>                Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 2:15-cv-00932-GMN-NJK<br><br>REPORT AND RECOMMENDATION |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner"). Currently pending before the Court is Plaintiff Julius C. Aguila's Motion for Reversal and/or Remand. Docket No. 17. The Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand. Docket Nos. 18, 19. This action was referred to the undersigned Magistrate Judge for a report of findings and recommendation pursuant to 28 U.S.C. 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.  JUDICIAL STANDARD OF REVIEW**

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *See, e.g.*, *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g.*, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

## II. PROCEDURAL HISTORY

On August 19, 2011, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income. *See* Administrative Record ("AR") 214-17, 218-25. Those applications were denied initially on March 22, 2012, and upon reconsideration on January 25, 2013.

AR 149-52, 158-60. On September 24, 2013, Plaintiff, represented by his attorney, appeared before Administrative Law Judge ("ALJ") David Gatto, and testified on his own behalf. AR 43-60. On November 4, 2013, the ALJ issued his decision, finding that Plaintiff was not disabled under the Social Security Act. AR 23-37.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 and issued an unfavorable decision. AR 23-37. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 1, 2010, his alleged onset date. AR 25. At step two, the ALJ found that Plaintiff has the following severe impairments: "schizoaffective disorder; bipolar disorder; and psychotic disorder." *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 26-28.

The ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, except that he is limited to work involving following simple instruction to perform, routine tasks with no rapid or frequent changes in work routine, and occasional interactions with the public. AR 28. At step four, the ALJ found that Plaintiff was able to perform past relevant work. AR 34-36. At step five, relying on a vocational expert, the ALJ alternatively found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and residual functional capacity. *Id*. Based on all of these findings, the ALJ found Plaintiff not disabled and denied his applications for Social Security Disability Insurance benefits and Supplemental Security Income. AR 36-37.

On April 21, 2015, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. AR 1-7. On May 18, 2015, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Docket No. 1.

**II.     ANALYSIS**

The sole issue on appeal is whether the ALJ properly assessed Plaintiff's credibility. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of his symptoms. First, the ALJ "must determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree

of pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (internal quotations omitted). Second, "if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). In determining credibility, an ALJ may consider a range of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

Here, Plaintiff contends that the ALJ did not provide specific and legitimate reasons for rejecting his testimony regarding his subjective limitations. Docket No. 17 at 6. Specifically, Plaintiff objects to the ALJ's findings that Plaintiff's testimony lacked support in the objective medical evidence, and that Plaintiff's prior statements and daily activities were inconsistent with his claims of disability. *Id*. at 9-14. The Commissioner responds that the ALJ properly incorporated these factors into his credibility determination. Docket No. 18 at 4-12.

1. Inconsistent Activities and Statements

First, the ALJ noted that Plaintiff engaged in behaviors inconsistent with his alleged disability. AR 29. These findings were supported by the record, and were, in fact, based on Plaintiff's testimony itself. *See* AR 49-50. For example, the ALJ noted that, although Plaintiff complained of disabling psychological limitations, he testified that his daily activities consisted of cleaning the house, watching television, and driving to the store by himself to buy groceries and cigarettes. AR 29. The ALJ therefore concluded that Plaintiff's "attempt to minimize his ability to participate in such activities undermine[d] the credibility of [Plaintiff's] allegations of disabling functional limitations." *Id*.

Plaintiff contends the ALJ erred in evaluating his daily activities and argues that these activities did not conflict with his purported limitations. Docket No. 17 at 10. Plaintiff's argument is unpersuasive because it omits the most strenuous activities in which he engaged. *Id.* For instance, Plaintiff's counsel argues that Plaintiff testified only that he cleans the house, watches television, and "stays at home." *Id.* A review of Plaintiff's testimony indicates, however, that, upon examination by the ALJ, Plaintiff admitted he still maintained his driver's license and drives to the store to shop for groceries. AR 50. Therefore, the factual premise of Plaintiff counsel's argument that he stays at home is directly contradicted by Plaintiff's own testimony.

Further, Plaintiff's reliance on *Cooper v. Brown*, 815 F. 2d 577 (9th Cir. 1987) is misplaced. As Plaintiff explains, in *Cooper*, the Ninth Circuit held that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Docket No. 17 at 11 (quoting *Cooper*, 815 F. 2d at 561). Twenty-five years later, however, the Ninth Circuit revisited *Cooper*, explaining that:

> While a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted in part). Clearly, the ALJ did not err, and was well within the confines of *Molina* by noting that Plaintiff's attempts to minimize his abilities undermined his claims of debilitating impairment.

Second, Plaintiff argues that the ALJ erred in considering his prior inconsistent statements about the reasons he left his last job. Docket No. 72 at 12. The record plainly demonstrates that Plaintiff made a number of inconsistent statements about why he was no longer employed. For instance, on December 27, 2010, Plaintiff reported that he intended to return to work, but later testified that he was permanently disabled. *Compare* AR 431 (stating that Plaintiff talked of plans of returning to work) *with* AR 49 (Plaintiff testifying that he was unable to work). Further, on April 8, 2010, Plaintiff reported that he "recently resigned" from his prior job, but during the hearing, Plaintiff testified his employer fired him for failing to call in before missing work. *Compare* AR 421 (providing Plaintiff's statement that he

recently resigned from his prior job) *with* AR 48 (Plaintiff testifying he was fired from his prior job). These inconsistencies are supported by the record, and the ALJ properly considered thse inconsistent statements in his credibility evaluation. *See Ghanim*, 763 F.3d at 1163.

Further, Plaintiff argues that the ALJ erred in considering his receipt of unemployment benefits as evidence of a prior inconsistent statement. Docket No. 17 at 12. The Ninth Circuit has explained that receipt of employment benefits can serve as evidence of a prior inconsistent statement. *Ghanim*, 763 F.3d at 1165 (noting that "receipt of unemployment benefits does cast doubt on a claim of disability").

Under NRS 612.385[1], a person is ineligible for unemployment benefits if he or she is discharged from his or her employment for disqualifying "misconduct connected with the person's work." "Disqualifying misconduct occurs when an employee deliberately and unjustifiably violates or disregards her employer's reasonable policy or standard." *Clark Cty. Sch. Dist. v. Bundley*, 148 P.3d 750, 754 (2006). The Supreme Court of Nevada has affirmed findings that failure to call in prior to a work absence constitutes disqualifying misconduct. *Kraft v. Nevada Employment Sec. Dep't*, 717 P.2d 583, 584 (1986).

Here, Plaintiff testified that he received unemployment benefits, even though he also testified that he was fired because he failed to call in prior to a work absence. *Id*. The ALJ found that:

> The claimant testified . . . [that he] was terminated . . . after he reportedly did not call into work[.]  Although he alleges that he was terminated for cause, the claimant acknowledged he received unemployment benefits[.]  [This] is not consistent[.]

AR 29. The ALJ did not error in recognizing this inconsistency and incorporating it into his credibility analysis. *Kraft*, 717 P.2d at 584; *Ghanim*, 763 F.3d at 1165.

2. Objective Medical Evidence

Next, Plaintiff objects to ALJ's conclusion that Plaintiff's testimony lacked support in the objective medical evidence. Docket No. 17 at 13. Plaintiff argues that the ALJ "simply set forth the oft rejected boilerplate language" and "did not identify what objective evidence was inconsistent" with

---

[1] Plaintiff's argument erroneously proceeds under the assumption that Plaintiff received unemployment benefits from the State of California. Docket No. 17 at 12. However, Plaintiff lived and worked in, and, therefore, collected benefits from the State of Nevada. *See* AR 228 (showing that Nevada paid unemployment benefits).

Plaintiff's testimony. *Id.* Therefore, Plaintiff contends that the ALJ's credibility assessment is "wholly insufficient." *Id.*

An ALJ may consider objective medical findings in discounting a claimant's testimony. *Burch*, 400 F.3d at 681. However, general findings in that regard are insufficient, and lack of medical evidence cannot form the sole basis for discounting testimony. *Id.*

While correctly stating the law, Plaintiff's analysis as applied to this case is flawed. Here, although the lack of medical evidence was among the factors the ALJ considered, it was not the ALJ's only basis for discounting Plaintiff's credibility. As discussed above, the ALJ found that Plaintiff's daily activities and prior inconsistent statements belied his claims of disability. Further, after surveying the record at length, the ALJ made specific findings supporting his conclusion that Plaintiff's claims of disability lacked support in the objective medical evidence. AR 30, 33-34.

First, the ALJ gave significant weight to the medical consultants, Hillary Weiss, Ph.D., and Pastora Roldan, Ph.D. AR 33-34. Both Dr. Weiss and Dr. Roldon, after reviewing the objective medical evidence, found that Plaintiff could perform simple tasks in a moderately demanding work environment with limited public contact. AR 66; AR 128. These opinions were inconsistent with Plaintiff's claims of severe disability, and the ALJ did not err in considering them. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that inconsistency between medical evidence, including two medical expert's opinions that claimant could work, could be incorporated into credibility determination).

Second, the ALJ noted that, "despite repeated recommendations to start psychotherapy counseling, [Plaintiff] testified that he is not receiving treatment from a counselor, which suggests [Plaintiff's] symptoms are not as severe as he purports." AR 30. This finding is derived from Plaintiff's own testimony, and the ALJ did not err by taking into account lack of treatment. *Burch*, 400 F.3d at 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination").

Third, the ALJ found that Plaintiff's "symptoms have significantly improved with continued treatment of prescribed psychotropic medication[,]" despite Plaintiff's allegations of limiting mental conditions. AR 33. The record supports this finding. AR 447 (Plaintiff stating that current medications

had stabilized his mood). The ALJ did not err in concluding that the success of Plaintiff's treatment, when Plaintiff was compliant his treatment plan, undermined his contentions that he was disabled. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (noting that successful treatment undermined Plaintiff's claims of disability).

Finally, Plaintiff disagrees with the weight that the ALJ afforded to his Global Assessment of Functioning ("GAF") scores. Docket No. 17 at 13-14. Plaintiff argues that his GAF scores indicate that he has a serious mental disability, and therefore, should have been incorporated into the ALJ's assessment of the objective medical evidence. *Id.* at 14. However, the Commissioner has declined to endorse GAF scores. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50764–65 (Aug. 21, 2000) (codified at 20 C.F.R. pts. 404 & 416) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"). The ALJ here "read and considered" Plaintiff's GAF scores, but afforded them little weight because they were subjective assessments that ranged broadly and revealed only subjective snapshots of Plaintiff's condition. AR 33. The ALJ did not err in assigning little weight to Plaintiff's GAF scores. *See Pinegar v. Commissioner of Social Sec. Admin.*, 499 Fed. Appx. 666, 667 (9th Cir. 2012) (explaining that the "Commissioner has stated that such scores do not directly correlate with the requirements of Listing 12.04 for a finding of disability, and [the Ninth Circuit] has not found error when an ALJ does not consider them"); *Doney v. Astrue*, 485 Fed. Appx. 163, 165-66 (9th Cir. 2012) (no error for ALJ to disregard GAF scores from treating psychologist without setting forth clear and convincing reasons); *McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (failure to address GAF scores does not constitute legal error").

## IV. CONCLUSION

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion. The Court finds that, while Plaintiff may not agree with the ALJ's interpretation of the record, the facts relied upon by the ALJ are supported by the record. Moreover, Ninth Circuit authority confirms that the factors considered by the ALJ were

proper and that the ALJ could make an adverse credibility finding based on those factors taken collectively. Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g) and the ALJ did not commit legal error.

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Reversal and/or Remand, Docket No. 17, be **DENIED** and that Defendant's Cross-Motion to Affirm, Docket No. 18, be **GRANTED**.

IT IS SO ORDERED.

DATED: February 22, 2016

_____
NANCY J. KOPPE
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).